UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DANDRIDGE III,

       Plaintiff,

       Case No. 1:13-cv-573

v.

       HON. JANET T. NEFF

NORTH AMERICA FUEL SYSTEMS
REMANUFACTURING, LLC,

       Defendant.
_____/

**OPINION**

Plaintiff John Dandridge, III, a former employee of Defendant North America Fuel Systems Remanufacturing, LLC ("NAFSR" or "Defendant"), filed this action under the Family and Medical Leave Act of 1993 ("FMLA" or "the Act"), 29 U.S.C. § 2601 *et seq.* Pending before the Court is Defendant's Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt 35). Plaintiff filed a response (Dkt 37), and Defendant filed a reply (Dkt 38). Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs, joint statement of undisputed material facts and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant's motion is properly denied.

**I. BACKGROUND**

NAFSR, which owns and operates a manufacturing facility in Kentwood, Michigan, remanufactures fuel system components (Dkt 32, "Joint Statement of Undisputed Material Facts for

Defendant's Motion for Summary Judgment" [JSUMF], ¶ 1). NAFSR hired Plaintiff in 2005 (*id.* ¶ 2). During his employment with NAFSR, Plaintiff worked multiple jobs including assembly work, putting parts together for fuel injectors, operating the grinding machine, and working in the power wash area and on a hone line (Dkt 37-1, Pl. Dep. at 23).

NAFSR uses MorningStar Health (MorningStar), a third-party FMLA administrator (JSUMF ¶ 4). MorningStar collects FMLA certification forms from NAFSR employees who apply for leave. MorningStar tracks FMLA hours for each employees (*id.*). NAFSR employees must call MorningStar each time to inform the employer that they will be taking FMLA leave (*id.*). Plaintiff first applied for FMLA leave with NAFSR around June of 2007 (*id.* ¶ 5). This leave was approved without protest or challenge from NAFSR (*id.*). Plaintiff was reappointed to his position with NAFSR after he returned from leave (*id.*).

In 2008, Plaintiff and Ryan Cooper (Cooper), another NAFSR employee, acquired a land contract for a commercial property at 1163 Giddings Avenue in Grand Rapids, Michigan ("the JD Coop commercial property") (JSUMF ¶ 3; Dkt 37-1, Pl. Dep. at 13-16).

On or around April 13, 2011, Plaintiff applied for intermittent FMLA leave with NAFSR (JSUMF ¶ 6). According to Plaintiff, he had begun experiencing migraine headaches and nosebleeds due to excess dust generated by the grinding wheel at NAFSR (Dkt 37-1, Pl. Dep. at 31). On May 9, 2011, MorningStar issued an electronic "Designation Notice" to both Plaintiff and Defendant (JSUMF ¶ 6). The Notice informed the parties that Plaintiff had been approved for FMLA leave for "migraines" (*id.*). The notice specified that Plaintiff's FMLA leave began April 15, 2011 and lasted until April 15, 2012 "with an anticipated frequency of up to two occurrences every two weeks, each lasting up to ten hours" (*id.*). The notice also stated that Plaintiff was approved for FMLA leave

"when you are incapacitated by, or receiving medical treatment for," his migraine headaches (*id.* ¶ 8). The notice stated that "[y]ou are required to return to work at any time during your work shift if you are feeling better and are no longer incapacitated" (*id.*). Plaintiff received a copy of this Notice (*id.* ¶ 9).

Plaintiff testified that on some dates, he called into work and requested use of FMLA leave because he woke up suffering from a mild migraine headache that he feared would intensify if he went into work (Dkt 37-1, Pl. Dep. at 52). On May 23, 2011, Plaintiff was scheduled to work at NAFSR between 2:30 p.m. and 10:30 p.m. (JSUMF ¶ 10). At or around 11:00 a.m., Plaintiff received a call on his cellular phone from Cooper (*id.* ¶ 11). At 1:31 p.m., Plaintiff called MorningStar to report an FMLA absence for that day (*id.* ¶ 12). Plaintiff informed MorningStar that he was taking FMLA leave because of a migraine (*id.*).

A private investigator retained by NAFSR used a video camera to obtain surveillance footage of the JD Coop commercial property storefront (JSUMF ¶ 13). The video shows Plaintiff's blue minivan parked at the property at 4:34 p.m., 5:34 p.m., and 6:29 p.m. on May 23, 2011 (*id.*). At 7:05 p.m., the private investigator obtained video of Plaintiff and Cooper returning to the property in Cooper's car (*id.* ¶ 14). Plaintiff and Cooper exited Cooper's car and entered the JD Coop commercial property at 7:07 p.m. (*id.*). At 7:17 p.m., Plaintiff left the property (*id.* ¶ 15). At 7:18 p.m., Plaintiff crossed the street to obtain some items from a nearby convenience store (*id.*). He exited the store at 7:21 p.m. (*id.*). Plaintiff then reentered the commercial property (*id.*).

According to Plaintiff, he received notice that his property was burglarized and went to inspect the property, even though he was suffering from a migraine headache at the time (Dkt 37-1,

3

Pl. Dep. at 58, 63-65). Plaintiff emphasizes that he was co-owner of the property and was attending to a matter in which the police were called (*id.* at 60-62).

Plaintiff reported to work as scheduled at NAFSR on May 24 and 25, 2011, without incident (JSUMF ¶ 16). On May 26, 2011, Plaintiff attended a meeting with NAFSR Human Resources Representative Roger Miller, NAFSR Vice President Jeff Latkiewitz, and second shift supervisor Mike Evans (*id.*). During this meeting, Plaintiff was represented by United Automobile Workers (UAW) union representative Ed Kosiorek (*id.*).

Plaintiff alleges that during the meeting, he was shown footage from May 23, 2011 of him exiting a convenience store with a bag, and later entering his commercial property (Dkt 1, Compl. ¶ 18). Plaintiff further alleges that "Defendant told Plaintiff he was being terminated and that he had no choice but to accept the termination or immediately resign, and if he resigned Defendant would not fight his unemployment benefits" (*id.*). Plaintiff alleges that on May 26, 2011, he resigned from Defendant "under duress" (*id.* ¶ 19). Plaintiff asserts that he called NAFSR approximately thirty minutes after the meeting to request that his employment be reinstated or, in the alternative, that his "voluntary resignation" be changed to a termination, a request that was refused (Dkt 37, Pl.'s Resp. at 9, citing Dkt 37-4, Pl.'s Ex. D, 5/26/2011 Letter "regard[ing] your request to change you[r] separation").

On May 23, 2013, Plaintiff filed this suit against Defendant, claiming that Defendant's actions violated the FMLA. Specifically, Plaintiff alleges that "Defendant's requirement that Plaintiff resign or be terminated was in effect a termination and interfered with the plaintiff's rights under the Family and Medical Leave Act and denied Plaintiff the FMLA benefits to which he was entitled, regardless of Defendant's intent" (Count I) (Dkt 1, Compl. ¶ 25). Additionally, Plaintiff

4

alleges that "Defendant held a bias toward those employees exercising their rights under the FMLA," "engaged in a unreasonable pattern and practice of enhanced scrutiny of FMLA employees," and "retaliated against Plaintiff, in the terms and conditions of his employment, including but not limited to requiring Plaintiff to resign because Plaintiff took his approved leave under FMLA" (Count II) (Dkt 1, Compl. ¶¶ 29-30). Following a pre-motion conference, this Court issued an Order permitting the parties to brief Defendant's proposed dispositive motion (Dkt 30). The parties filed their motion papers in August 2014 (Dkts 35-38).

## II. ANALYSIS

### A. Motion Standard

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Discussion

The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA affords those who cannot work as a result of a "serious health condition" up to twelve weeks of leave in one year. 29 U.S.C. § 2612(a)(1)(D). Under certain circumstances, FMLA leave may be taken "on an intermittent or reduced schedule basis." 29 C.F.R. § 825.203(a).

The Sixth Circuit Court of Appeals has identified two distinct theories of recovery available under the FMLA: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). The employee must establish the elements of interference or retaliation by a preponderance of the evidence. *Id.* at 447 (citing *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005)).

To prevail under an interference theory, which Plaintiff alleges in Count I of his Complaint, an employee must establish the following:

1.  the employee is an eligible employee as defined by 29 U.S.C. § 2611(2);

2.  the employer is an eligible employer as defined by 29 U.S.C. § 2611(4);

3.  the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);

4.  the employee gave the employer notice of his intention to take FMLA leave, 29 U.S.C. § 2612(e)(1); and

5.  the employer denied the employee FMLA benefits to which he was entitled.

*Wysong*, 503 F.3d at 447 (citing *Cavin*, 346 F.3d at 719).

To prevail under a retaliation theory, which Plaintiff alleges in Count II of his Complaint, the employee must show that the employer discharged or otherwise discriminated against him for exercising FMLA rights or opposing any practice made unlawful by the FMLA. *Arban v. West Pub. Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). FMLA retaliation claims founded upon circumstantial evidence are adjudged in accordance with the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Clark v. Walgreen Co.*, 424 F. App'x 467, 472-73 (6th Cir. 2011). Specifically, a plaintiff makes a prima facie case of retaliation by showing that

      1.      the employee availed himself of a protected right under the FMLA by notifying the employer of his intent to take leave,

      2.      the employee suffered an adverse employment action, and

      3.      there was a causal connection between the exercise of rights under the FMLA and the adverse employment action.

*See Edgar*, 443 F.3d at 508 (citing *Skrjanc*, 272 F.3d at 314 (setting forth this framework); and *Rodriguez v. Ford Motor Co.*, 382 F. Supp. 2d 928, 933 (E.D. Mich. 2005) (applying this test to a retaliatory-discharge claim under the FMLA)). If the employee satisfies these three requirements, then the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for discharging the employee. *Edgar, supra* (citing *Skrjanc*, 272 F.3d at 315). "[A] reason cannot ... be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphases and quotation marks omitted).

      Defendant's motion at bar advances three arguments challenging both counts—(1) whether Plaintiff resigned voluntarily, (2) whether NAFSR has a valid "honest belief" defense, and (3) whether Plaintiff was "incapacitated" on the day in question. The Court determines that Defendant's arguments do not demonstrate that it is entitled to judgment as a matter of law on either Count I or Count II of Plaintiff's Complaint.

      ***Voluntary Resignation.*** First, Defendant argues that by voluntarily resigning from his position at NAFSR, Plaintiff cannot meet his prima facie burden for either of his FMLA claims (Dkt 36, Def.'s Br. at 14). Defendant argues that Plaintiff cannot prove the first element of his interference claim because "Sixth Circuit law is clear that an employee who voluntarily resigns from his position loses his or her status as an 'eligible employee' entitled to rights and benefits under the

FMLA" (*id.,* citing *Miles v. Nashville Elec. Serv.*, 525 F. App'x 382, 388 (6th Cir. 2013)). Additionally, Defendant argues that Plaintiff cannot prove the third element of his retaliation claim because an employee who voluntarily resigns "cannot claim that he suffered an adverse employment decision under the . . . FMLA" (*id.*, quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999)). Defendant argues that under Michigan law, Plaintiff's resignation was not involuntary or ineffective merely because the alternative to his resignation was termination (*id.* at 15-17, citing *Lagrow v. Cnty. of Berrien*, No. 278064, 2008 WL 5197120 (Mich. Ct. App. Dec. 11, 2008), and *Leamon v. Cent. Mich. Dist. Health Dep't*, No. 08-14731-BC, 2010 WL 1136535 (E.D. Mich. Mar. 24, 2010)).

Plaintiff responds that his resignation was involuntary and constitutes an adverse employment action (Dkt 37, Pl.'s Resp. at 7). Plaintiff asserts that he was not given an opportunity to discuss with his union representative, in detail, what to expect from the meeting and did not fully understand the consequences of voluntarily resignation or termination (*id.* at 8). Further, Plaintiff asserts that he was not given reasonable time on May 26, 2011 to choose between resignation or termination (*id.* at 10). Last, he asserts that he was not given the opportunity to choose the date of his resignation, that the Voluntary Resignation Agreement was presented to him on May 26, 2011 and became effective on May 26, 2011 (*id.* at 11).

In general, employee resignations are presumed to be voluntary. *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 895 (6th Cir. 2004). However, the Sixth Circuit Court of Appeals has held that "[a]n employee may rebut this presumption by producing evidence indicating that the resignation was involuntarily procured." *Id.* "Whether an employee's resignation was involuntary depends upon whether an objectively reasonable person would, under the totality

8

of the circumstances, feel compelled to resign if he were in the employee's position." *Id.* Relevant to this inquiry are "(1) whether the employee was given an alternative to resignation, (2) whether the employee understood the nature of the choice he was given, (3) whether the employee was given a reasonable time in which to choose, and (4) whether the employee could select the effective date of resignation." *Id.* (quoting *Lenz v. Dewey*, 64 F.3d 547, 552 (10th Cir. 1995)).

The Sixth Circuit held that "an employee resigns involuntarily if, after being given a choice between resignation and termination, [he] is not granted sufficient time and opportunity to deliberate about the choice." *Rhoads, supra.* The Sixth Circuit clarified that "[t]he mere fact that an employee is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is involuntary, provided that the employer had good cause to believe there were grounds for termination." *Id. See, e.g., Leamon*, 2010 WL 1136535, at *2 (rejecting the plaintiff's argument to the contrary).

In two of the cases upon which Defendant relies, the courts found that the totality of the circumstances did not support finding that the employee's resignation was involuntary. *See Miles*, 525 F. App'x at 388 (where "the record indicate[d] that [the plaintiff] voluntarily resigned from her position"); *Lagrow*, 2008 WL 5197120, at *5 (where the plaintiff presented "no evidence" suggesting that her employer, "upon informing plaintiff that her employment with the county had come to an end, acted unlawfully and deprived her of the exercise of her free will").

Here, in contrast, the evidence relevant to the nature of Plaintiff's resignation is not so one-sided that Defendant must prevail as a matter of law. Rather, the Court determines that taken in the light most favorable to Plaintiff, the evidence in the record presented thus far, particularly Plaintiff's deposition testimony, supports that Plaintiff was not given an alternative to resignation

9

and could not select the effective date of his "voluntary" resignation. Further, the evidence in the record presented thus far gives rise to factual questions about whether Plaintiff understood the nature of the choice he was given and whether he was given a reasonable time in which to choose. Indeed, in *Hammon*, the last case cited by Defendant, the Sixth Circuit indicated that it "an employee's voluntary resignation is not truly voluntary when his employer has encouraged him to resign in order to prevent him from claiming an employee benefit." 165 F.3d at 447. In short, Defendant's first argument does not warrant granting judgment as a matter of law in its favor on either of Plaintiff's claims.

***Honest Belief.*** Second, Defendant argues that even if Plaintiff's resignation does not defeat his FMLA interference and retaliation claims, the claims must fail because NAFSR had an "honest belief" in its legitimate, nondiscriminatory reason for discharging Plaintiff, to wit: Plaintiff's fraud and dishonesty (Dkt 36, Def.'s Br. at 18, citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274 (6th Cir. 2012)).

In response, Plaintiff argues that while Defendant alleges that there "appeared to be a pattern" between Cooper's and Plaintiff's FMLA absences, there were only four instances prior to May 23, 2011 where the two employees requested FMLA leave on the same date (Dkt 37, Pl.'s Resp. at 14-15). Plaintiff opines that Defendant's "suspicion of a pattern" was insufficient to warrant Plaintiff's involuntary resignation, and that the termination of an employee should not stand squarely on "rumors" (*id.* at 14, 18). Plaintiff argues that the May 23, 2011 video footage also did not alone provide Defendant with a sufficient basis upon which to conclude that Plaintiff was *not* incapacitated and incapable of working (*id.* at 14). According to Plaintiff, Defendant used video surveillance to make assumptions, jump to a conclusion, and "without reasonable basis prematurely force[] Plaintiff

10

to resign before properly conducting a more thorough investigation into Plaintiff's FMLA leave on May 23, 2011" (Dkt 37, Pl.'s Resp. at 15).

A plaintiff may establish pretext by showing that the employer's proffered reason for an adverse employment action (1) has no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Seeger*, 681 F.3d at 285 (citations and internal quotation marks omitted). However, where an employer can demonstrate an "honest belief" in its proffered reason for an adverse employment action, the inference of pretext is not warranted. *Id.* (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 794 (6th Cir. 2006)). Under the "honest belief rule," an employer's proffered reason for an adverse employment action is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made. *Seeger*, 681 F.3d at 285 (quoting *Joostberns*, 166 F. App'x at 794). Thereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held. *Id.*

An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact. *Seeger*, 681 F.3d at 285 (quoting *Joostberns*, 166 F. App'x at 794). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). "[T]he employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* at 286 (quoting *Smith*, 155 F.3d at 806); *see also Allen v. Wal-Mart Stores, Inc.*, No. 14-1748, 2015 WL 1002975, at *4 (6th Cir. Mar. 6, 2015). However, "[a]n employer's invocation of the honest belief rule does not automatically shield it,

because the employee must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Seeger, supra* (quoting *Smith*, 155 F.3d at 807).

Viewing the evidence in the light most favorable to Plaintiff, particularly his deposition testimony about his prior complaints as well as his medical evidence substantiating his pre-termination complaints, the Court determines that Plaintiff has demonstrated at least a question of fact about whether Defendant's decision-making process was worthy of credence. Defendant attempts to analogize this case to the facts in *Seeger*, where the Sixth Circuit upheld the granting of summary judgment on an employee's FMLA retaliation claim. However, the employer's investigation in *Seeger*, which the Sixth Circuit described as "thorough," included the employer conducting interviews, taking formal statements, scrutinizing the employee's medical records with the assistance of a nurse, requesting documentation from the employee and giving the employee the opportunity to submit additional relevant information. 681 F.3d at 287.

Specifically, Defendant indicates that "[a]fter NAFSR obtained evidence strongly suggesting that his use of leave was fraudulent, NAFSR's management reviewed the video, showed it to the UAW, and informed the UAW that it was prepared to terminate Dandridge for fraud if he did not resign" (Dkt 36, Def.'s Br. at 20). Although an employer is not required to conduct an "optimal" investigation to take advantage of application of the honest belief rule, the limited and singularly-focused nature of Defendant's investigatory process—the video—in this case stands in stark contrast to the efforts by the employer in *Seeger*, and forecloses application of the "honest belief" defense as a basis for judgment as a matter of law on Plaintiff's claims. *See, e.g., Turner v. Parker-Hannifin Corp.*, No. 1:11-CV-300, 2012 WL 1229125, at *6 (W.D. Mich. Apr. 12, 2012) ("The determination

12

of whether it was reasonable for the Company to simply equate hunting with the ability to work without considering what was involved in either activity is a question of fact that must be left for a jury.").

*Incapacitated.* Last, Defendant argues that Plaintiff's FMLA interference claim fails because the evidence proves that Plaintiff has failed carry his own burden to demonstrate entitlement to FMLA leave on the day in question (Def.'s Br. at 21-22, citing *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 351 (6th Cir. 2013)). Defendant claims that Plaintiff admits that he was not incapacitated at the time he called MorningStar to report his absence from work on May 23, 2011 and admits that he did not receive medical treatment from the May 23, 2011 migraine (*id.* at 22). Defendant emphasizes that the FMLA only entitles employees to take intermittent leave during periods of incapacity, not because they "anticipate" being incapacitated (*id.* at 23, citing 29 CFR § 825.113(b)).

In response, Plaintiff points out that NAFSR knew he suffered from migraines and nosebleeds and that NAFSR was provided medical certification regarding his condition (Dkt 37, Pl.'s Resp. at 15). Plaintiff asserts that he was not totally disabled on May 23, 2011 by his migraine and could "walk and drive and talk" (*id.* at 14, 18; Dkt 37-7, Pl. Dep. at 59-60). Pointing out that he "complained 'a lot' to NAFSR that fumes … exacerbated his migraine headaches," Plaintiff opines that his headache increased in intensity on May 23, 2011 and that he was under "no obligation to return to work; he was not feeling better and he continued to be incapacitated during his scheduled shift" (*id.* at 15).

Under the Code of Federal Regulations, a "serious health condition" is defined as "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in

§ 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). The Code of Federal Regulations further defines the term "incapacity" to mean an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

The Sixth Circuit Court of Appeals has held that where an employer presents evidence impugning an employee's leave requests, e.g., video surveillance evidence, the employee has a duty to come forward with "some evidence showing his entitlement to the leave." *Tillman*, 545 F. App'x at 355 (citing 29 U.S.C. § 2614(a)(1) (predicating FMLA leave and reinstatement upon the employee "tak[ing] leave ... for the intended purpose of the leave"). A court may not presume from an employee's chronic condition and intermittent leave requests that he actually suffered from a serious condition on the specific day in question. *Id.* "Otherwise, the medical certification attesting to an intermittent condition could be used as a license to take unnecessary medical leave, eliminating the employee's burden of showing entitlement." *Id.*

Here, Plaintiff testified at his deposition that he called in absent on May 23, 2011 because he "had a migraine headache" and "knew, if I went to work my headache will intensify" (Dkt 37-1, Pl. Dep. at 65, 76). In other words, according to Plaintiff, he was experiencing a period of incapacity that he knew would worsen; he was not merely "anticipating" a period of incapacity. Indeed, the May 26, 2011 termination meeting notes Defendant supplied indicate that Plaintiff attempted to explain, consistent with his FMLA certification authorizing the leave, that he "was [sick]," that he "wasn't working," and that the video did not show that he "wasn't sick" or that he was "lifting anything heavy or anything like that" (Pl.'s Ex. 13, Dkt 36-13 at 3-4). While Plaintiff may not be able to ultimately prove that he required leave on the specific day in question, a genuine issue of

material fact remains for trial with respect to the question of whether Plaintiff's request was protected under the FMLA. Therefore, Defendant's argument does not demonstrate that it is entitled to judgment as a matter of law on Plaintiff's interference claim.

### III. CONCLUSION

For the foregoing reasons, the Court determines that Defendant's Motion for Summary Judgment (Dkt 35) is properly denied. An Order will be entered consistent with this Opinion.


DATED: March 16, 2015            /s/ Janet T. Neff
                                 JANET T. NEFF
                                 United States District Judge